UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KENNETH JOHNSON                                    CIVIL ACTION

V.                                                 NO. 17-9439

WAL-MART STORES, INC.                              SECTION "F"

ORDER AND REASONS

Before the Court is the defendant's motion for summary judgment. For the following reasons, the motion is DENIED as to Johnson's claim that Wal-Mart store 451 failed to re-hire him in violation of the ADA, and GRANTED as to Johnson's claim that other Wal-Mart locations failed to hire him.

**Background**

A Wal-Mart employee took a leave of absence after experiencing a work-place injury, and while on leave, suffered a stroke. He was terminated from his position while recovering from the stroke, and was not re-hired once he recovered. This litigation followed.

Kenneth Johnson was employed at Wal-Mart Store No. 451 in Covington, Louisiana from 2002 until he resigned in 2010, and then again from March 2014 until he took a leave of absence in March 2016. Johnson was a Tire and Lube Express Service Technician in the automotive shop. Johnson injured a nerve in his right arm while loading tires onto a truck in February 2016. In March, his physician instructed him to stop working, and Johnson filed a

1

Workman's Compensation claim and took a leave of absence. On June 18, 2016, while on leave, Johnson suffered a stroke, which incapacitated him for several months. On August 29, 2016, the Store No. 451 personnel manager sent a certified letter to Johnson warning him that his leave of absence expired in April 2016, and advising him that he either needed to return to work, contact the storage manager to arrange a return date, or request an extension of his leave. Johnson received the letter, but a request for an extension was never filed.[1] As a result, Johnson's employment was terminated on September 22, 2016 for "failing to return from his leave of absence." He was designated as "re-hirable."

Johnson's neurologist cleared him to resume his duties in December 2016, and his orthopedic surgeon cleared him to resume in February 2017. Sometime between December 2016 and March 2017,[2] Johnson went to the automotive shop and spoke to his former direct supervisor, Waldo Bakker, about returning to work. Bakker confirmed that there was an open position, and indicated that Johnson could return to work. But when Johnson followed up in March, another manager in the automotive shop, Steve Nesmith, informed Johnson that he would not be re-hired at Store 451, but

---

[1] Johnson alleges that his physician failed to timely submit the paperwork.
[2] The papers submitted to the Court present inconsistent dates for when Johnson approached Bakker about resuming employment. It is also unclear when Johnson learned that he was terminated from Wal-Mart.

that he was welcome to apply to other Wal-Mart stores. Bakker later told Johnson that a new rule prevented them from re-hiring Johnson because he had already worked at that location. Johnson applied to ten positions at other Wal-Mart stores, but did not receive an interview. He eventually found employment elsewhere.

Johnson filed an EEOC charge of discrimination on March 21, 2017, alleging discrimination under the Americans for Disability Act. The EEOC issued a Right to Sue letter on September 18, 2017. Johnson sued Wal-Mart on September 21, 2017. Wal-Mart moved for summary judgment on June 12, 2018.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. In this regard, the non-moving party must do more than simply deny the allegations

3

raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Id. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the

nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

II.

A.

Before the Court can turn to the merits of the case, it must consider whether the plaintiff's claims are procedurally barred. The defendant contends that the plaintiff failed to exhaust his administrative remedies because the EEOC charge of discrimination alleges a different claim of discrimination, involving different facts and circumstances, than the complaint.

Plaintiffs must exhaust administrative remedies before pursuing employment discrimination claims in federal court. Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." Id. at 379. However, the scope of the causes of action asserted in the complaint is limited by the allegations asserted in the EEOC charge. Fellows v. Universal Restaurants, Inc., 701 F.2d 447, 450-451 (5th 1983). The plaintiff's complaint is not limited to the exact allegations in the EEOC. Id.; Sanchez v. Standard Brands,

5

Inc., 431 F.2d 455, 465-467 (5th Cir. 1970)("[T]he specific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow."). Rather, the complaint may include claims for "any kind of discrimination like or related to the charge's allegation, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination." Fellows, 701 F.2d at 451.

The Fifth Circuit has acknowledged that limiting relief for a plaintiff's employment discrimination claim on "technical niceties of the language used by an often unlettered and unsophisticated employee in filing his or her initial grievance with the EEOC" circumvents the purpose of the law. Fellows, 701 F.2d at 450; Sanchez, 431 F.2d at 465-467. But "the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC." Sanchez, 431 F.2d at 466. Although the Fifth Circuit finds it "inconceivable" that a claimant would be denied relief "merely because he fail[ed] to articulate correctly the legal conclusion emanating from his factual allegations," the claimant must make sufficient allegations that an investigation could be expected to grow from the charge. Id. Therefore, the "crucial element" of an EEOC charge is its factual allegations. Id. at 462.

In his EEOC charge of discrimination, Johnson alleged the following:

> I began my employment with Wal-Mart around June 2013 as a TLE Technician earning $10.00 per hour. In February 22, 2016, I went out on Workman's Compensation due to a pinch[ed] nerve. While out on Workman's Compensation I had a Stroke. My doctor informed Walmart of my medical condition through Chadwick, which is the company that Walmart uses when you are out on Workman's Compensation. When I was cleared to go back to work towards the end of December 2016, I spoke with Waldo Bakker, Supervisor, he said to call him in a few days and he would put me on the schedule. I went to Walmart a few days later in December 2016, to get a paper filled out that my doctor needed. Manager, Steve LNU, refused to give me the paperwork because he stated I was discharged on September 22, 2016. I was never informed of my discharge while I was out on Workman's Compensation or when I spoke with Mr. Bakker. I have never had any write ups.
>
> According to the company, I was discharged for not returning from leave of absence.
>
> I believe that I have been discriminated against because of my disability in violation of The Americans with Disability Act, as amended.

In Johnson's complaint, he alleges that Wal-Mart refused to hire him at Store 451 and at other locations after he was cleared by his doctor because its employees regarded Johnson as disabled. The complaint does not assert a cause of action based on wrongful termination. Wal-Mart contends that because Johnson alleged a wrongful termination claim in the EEOC charge and a failure to re-hire claim in the complaint, the complaint is outside the scope of the EEOC charge. Without an applicable EEOC charge, Wal-Mart

7

contends, the plaintiff failed to exhaust his administrative remedies and his claim is barred.

The Court must construe Johnson's EEOC charge in the "broadest reasonable sense." Davenport v. Edward D. Jones & Comp., L.P., 891 F.3d 162, 167 (5th Cir. 2018). Although the allegation in the charge of discrimination is focused on his termination from Wal-Mart, it involves the same disability and the same Wal-Mart employees discussed in the complaint. Most importantly, Johnson states that one of his supervisors told him that he would place Johnson back on the schedule after Johnson had told him that he was cleared to return. Although not explicitly stated, the clear implication from the charge is that Johnson was not placed back on the schedule. An EEOC investigation into Johnson's claim for discrimination at that Wal-Mart location, including his termination and whether he was considered to be re-hired, could reasonably grow from his allegations in the charge of discrimination. However, Johnson does not allege that he applied to work at other stores. Nothing in the charge of discrimination would notify EEOC that Johnson's applications at other Wal-Mart locations had gone unanswered, let alone prompt investigation into the hiring process at those locations or into Wal-Mart's corporate hiring policies. There are no allegations that Johnson's supervisors acted to prevent Johnson from working at a Wal-Mart again. It is unreasonable to expect that an investigation into

8

discrimination beyond Store 451 would grow from the EEOC charge. Accordingly, Johnson's complaint as it regards store 451's failure to re-hire him was within the scope of the EEOC charge. But the aspect of Johnson's complaint that relate to other Wal-Mart store's failure to hire him are outside the scope of his EEOC charge. Accordingly, he did not exhaust his administrative remedies as to those claims, and they must be dismissed.

B.

Johnson contends that Wal-Mart refused to re-hire him at the location he had previously worked because he was regarded as disabled, in violation of the Americans with Disabilities Act. The ADA prohibits employers from discriminating against an employee on the basis of disability if the employee could perform the essential functions of the job, or reasonable accommodations would allow him to perform the essential functions. 42 U.S.C. §§ 12111-12; Cannon v. Jacobs Field Services North America, Inc., 813 F.3d 586, 591, 592 (5th Cir. 2016). To establish a *prima facie* case under the ADA, the plaintiff must show that: "(1) the plaintiff has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability." Cannon v. Jacobs Field Servs. North America, Inc., 813 F.3d 586, 590 (5th Cir. 2016). The ADA defines "disability" as: (1) "a physical or mental impairment that

9

substantially limits one or more major life activities of such individual;"³ (2) "a record of such an impairment; or" (3) "being regarded as having such an impairment." 41 U.S.C. § 12102(1). A person is regarded as having a disability if he establishes that he was "subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 41 U.S.C. § 12102(3)(A).

Johnson has submitted evidence to support each element, and material issues of fact preclude dismissal on summary judgment. Johnson has shown that he is qualified for the job. He stated in his sworn declaration that he had no disciplinary history while employed at Wal-Mart, and consistently received a "solid performance" rating on his evaluations. He submitted copies of letters from his physicians releasing him to return to work without restriction. And his former supervisor, Waldo Bakker, testified that he was not aware of any issues between Johnson and other employees and that the only reason he would not re-hire Johnson is if they did not have a need for additional employees.⁴ Bakker also

---

³ The ADA provides that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."
⁴ Bakker testified that he did not have the authority to re-hire Johnson, but had to get approval from another supervisor, Steve Nesmith. Bakker has authority to unilaterally hire for the

testified that store 451 was hiring and was in need of automotive technicians when Johnson attempted to return. Another of Johnson's managers, Kenneth Wenzer, also testified that he could not think of any reason why he would not re-hire Johnson.

Johnson also submitted evidence that he was regarded as disabled, and that he experienced an adverse employment decision because he was regarded as disabled. Johnson suffered a stroke in June 2016. He had difficulty speaking, and initially was unable to walk. To stay active during his recovery, Johnson and his wife would visit Wal-Mart two-to-three times a week for several months to do their shopping. Because Johnson was unable to walk, he would use an electric cart. According to both Johnson and his wife's signed declarations, Johnson would ride on his scooter past the automotive shop every visit and greet his old co-workers. He would speak to Waldo Bakker and Keith Hanson, who managed the automotive shop. According to the declarations, each time Bakker would ask when Johnson would return to work, and Johnson would reply "as soon as I can." The couple would also occasionally speak to Kenneth Wenzer. Wenzer would ask about Johnson's recovery, and assure them that if they needed anything, to just ask.[5] Once Johnson was released to work, he spoke to Bakker. According to Johnson, Bakker

---

automotive shop, but re-hires require additional approval from Steve Nesmith.
[5] Wenzer testified that does not recall these conversations or seeing Johnson at Wal-Mart during his recovery.

confirmed that there was a job opening and a need for an experienced worker, but Bakker expressed concern that Johnson was physically capable of holding the position. Once Johnson reassured him, Bakker stated that he would call Johnson in a few days and tell him when to come in. After a week passed without hearing from Bakker, Johnson called the automotive shop. Steve Nesmith, Bakker's supervisor, answered the call. According to Johnson, Nesmith told him "We aren't hiring you back, no matter what your doctors said you could do."

If provable, Nesmith's statement shows that Wal-Mart refused to re-hire Johnson because of his regarded disability. Nesmith's statement, if true, indicates that even though Johnson's physicians had stated that he was able to work, Nesmith still believed that Johnson was disabled from his injuries. Because a failure to rehire is an adverse employment action, there is an issue of fact as to whether Johnson experienced an adverse employment action because store 451 regarded him as disabled. See Payne v. McLemore's Wholesale & Retail Sores, 654 F.2s 1130, 1141 (5th Cir. 1981).

Accordingly, Wal-Mart's motion for summary judgment is DENIED as to Johnson's claim that Wal-Mart store 451 failed to re-hire him in violation of the ADA, and GRANTED as to Johnson's claim that other Wal-Mart locations failed to hire him, on the basis that Johnson failed to exhaust administrative remedies.

New Orleans, Louisiana, July 5, 2018

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE